Opinion of the Court, by
Ch. J. Boyle.
IN the former Supreme Court for the Districtof Ken-.lucky, John May, as assignee, instituted suit'against Arthur Fox and William Wood, upon a bond executed by them for a partnership debt, aud the process,being served on them at different terms, separate judgments were rendered against them at different terms, in the year 1786. Execution having issued on the judgment against-Wood, he replevied the debt, with.F. .Drake as his security.
' In the year 1794, Fox died, having previously made his will, of which he appointed Henry Lee and others tbe-executors; but Lee only qualified, and in' ihe year 1813, Drake filed his bill in chancery against Lee, as executor of Fox, ta recover the ajmount of the-replevy *248 B'ond executed bj Wood arid himself as security, and which he alleged he had been compelled (o pay, and in the year 1818-, obtained a decree against Lee for $903 36, besides posts-, to be levied of the estate in his hands unádministeredi
Arthiir Fox’s Will.
(l) Iteplevy* ing- a judgment against one obligor, is a legal discharge of not only that judgment, out also of a separate judgment rendered a-against another obligor for the same debt! so that no execution can issue on either judgment.
The demand which the security in a replevin bond, executed in discharge of one of two several judgments against co-obligors, for the same debt, obtains against the other, by paying off the bón<JVis not a debt of recovd; but is bl ‡® contracts and hisexeo-not , iioe'it. l° n°"
*248 An execution was issued upon this decree agdinst Lee,and returned ‘no-assets,’ and thereupon this action was instituted ágainst Lee, upon bis bond as executor.
The cause was tried'upon thfe plea of plane cidminis-travil, with leave to give special matter in evidence.
On the trial of the cause, it appeared, that by the will of Fox, after making provision-for his wife and specific devises to'his children, he gave authority to his executors to sell certain lots in the town of Washington, for the payment of his debts, and to sell alibis other land, and lay out the proceeds for the education and advantage of his children; that the widow of Fox had renounced the provision made for her by her husband’s will; and that the lots directed to be sold for the payment of debts, had been assigned to her for dower, and had never been sold, and were of the value of .$1,500; and that he, as executor, had sold under the will, $6,700 worth of land, and had accounted to the heir and devi-see therefor.
It also appeared, that at the time of the-' sale of the personal estate of Fox, his slaves and personal estate were o.f the value of £977; that the slaves constituted £242 of this value, and were not sold; that Lee, in-cludinghis reasonable expences, had administered and paid away to creditors, the full amount of the £977, without other notice of Drake’s demand, than is legally inferrable from the judgment at law of !786,orprov-ed by his answer to Drake’s bill, filed in 1813, and that of the payment made by Lee, constituting in the aggregate the sum of £977, there were £71 4s 7d paid to R. Johnson, in satisfaction of a bond executed by Fox to Nicholas, in 1786, for the conveyance of land which he had not conveyed and was unable to convey, £40 paid in satisfaction of a bond given by Fox in 1786, to Lloyd, for other land, which had not been-complied with, and £32 18s Gd, consisling of various items of expences incurred by Lee in the management of the testator’s landed estate. -
It also appeared, that the slaves, being mostly fe-' males, had, by patural increase, multiplied in number, *249 nnd had become of the value of $5,000; that they had been raised in the family of Lee, who in the year 1795, had married the widow of the testator, and had been divided among the heirs and devisees before the com-mcncement of this suit, and that upon delivering over the slaves to the heirs and devisees, Lee had taken bonds of them to refund, &c. according to the act of assembly, &C. '
(2) Where certain lauds are directed tobemfold for the pay-mentofdebts ^.‘j^edu vancementof llls children, ^ér are a£" signed for dower to the wido'r’ ,ibo the provisions of the will, tbn exoeutor proceeds of the latter Tni<^bt, perhaps, sell the reversion lor Land^'vheth er devised ordirectedto be 501(1 by payment of1 debts, never p lf,Sal assets only through a com t o hands, and can, therefore, be reached in their hands, equity.
*249 On this state of facts, various points of law were made on the part of Drake in the circuit court, all of which were decided against him by that court. Such of these as are deemed material to the interest of the parties, wc shall now proceed to consider.
(1) The first point we shall notice, is, that Drake’s demaud was a debt due by record, of which Lee was bound to take notice, and that the payment by him of bond debts, was a devastavit, and rendered him responsible, to the extent he had done so, for Drake’s demand. Tiiis point was predicated on the supposition, that the judgment in the supreme court against Fox, remained at his death in full force1, but this supposition, we prehend, is incorrect. The debt, it is true, had not been paid; -hut it had been replevied by Wood,and the replevy bond executed by him, operated as a legal discharge, not only of the original judgment against him, but of that against Fox for the same debt; so that no execution for the debt could have been rightfully issued upon either or those judgments.
Wood, by thus replevying the debt, legally speaking, made it his own, and Drake’s right to demand any part oí itirom box or Ins executor, depended upon his ing paid oil' the replevy bond, and upon Fox’s being jointly responsible with Wood for the original debt. These were facts susceptible of being proved or disproved by evidence duhirs the record; and, of course, Drake’s demand can only be considered, at law at least, as occupying the rank of a simple contract debt. The circuit court, therefore, correctly decided this point against Drake.
(2) The second point relied on for Drake which we shall notice, is, that the value of the lots directed by the will to be sold for the payment of debts, but which were assigned to the widow for her dower, ought to have been retained out of the other lands sold bv Lee. as *250 ccútor, and applied by him for the payment of debiiff II is a sufficient answer to this point-, that to have applied to one purpose the proceeds of lands directed by the will to be applied to another, would have been a plain breach of trust in the executor.
(3) The ex-pences and compensation to the •executor, for and sfíliná 5*eal estate devised to be sold for edo-advancement of children, ought to b?, :thod bf the -laud's,
An application of the tate°topay" the expénces of managing •thelande.din- . . justas ;tb'm 'creditors, «ud as to them, a dc- ■ vastavitin the executor.
a^’euin hfs" hands“\incc (4) Slaves, prior to the act of 1800, though specially devised, passed immediately to the execu-that act, they immediately to the devi-see.
*250 There would have been more plausibility in supposing that the executof ought to have sold the reversion in the ¡lots decreed to be sold for the payment of debts-, after the determination of dower, iuid that for his neglect ^ |Je oagfj|. ¿0 [jC responsible for the value of the reversion.
But, in 'truth, lands devised to be sold by an executor, aré never considered as legal assets in his hands. Lands which descend to the heirs, will be legal assets in (.heir hands, and when they are devised, except for the Payment óf debts, the devise is void as against creditors, under the statute against fraudulent devises, and the devisee is thereby made responsible to the extent of the va-.|,.ie 0f the lands, in a joint action against him and the heir-; but in no case are lands, in the hands of the ex* eculor, legal asset's. Whether they be simply directed ,£0 he sold by him, or are devised to him to be sold for payment of debts and legacies, they are considered not as 'legal, but as equitable assets, and can only be reached in his hands as executor, in a court of equity, and not in a court of law-»
(3) The third point which we shall notice, is, that Lee, instead .of appropriating the personal assets to the expences incurred in the management of the landed es- - - - ■ - . tale, should have indemnified himself for such expences -Out of -the proceeds of the lands sold by him, and left the personal estate for the payment of debts.
This seems to be not only reasonable in itself, but to be demanded by the plainest dictates of justice. Nor would there have been any tbjng in thus applying the proceeds of the lands sold by the executor, to the ex-peuces incurred in the management of the landed estate, incompatible with the duties enjoined upon him by the will. On the contrary, the will itself seems tore-quire it to be done; for the proceeds of the sale of the lands, are directed to be applied, not only to the education of the children, but to their advantage in general, anc* the management of the landed estate, whs exc!u-> .sively for their advantage.
so'ts in an action against ar^cTtie^'af ‘u'e'j j,ot as ' they came to, liJ® of bl‘^ at their1’ increased value, in con-th«ir!g«wti> anti increase of numbers, timo>oftho tj-inl, though be had, im-dis" t¡ífím t0 p10 heirs and devisees,
^e’, elect to take a ch«t(;>sa, slave, when they passetj t.o him as ex-®.°ntor) in ^ a(]®aaa|j ¡°<¡ had made for estate, own — -Avgu.
As against creditors, therefore, we think Lee had no fight to apply the personal estate to defray the cx pences incurred in the management of the landed interest, and thereby diminish, to the prejudice of creditors, the natural funds in his hands for the payment Qf debts; and, consequently, the circuit court erred in deciding this point against Drake.
(4) The fourth and last point we shali-notice, is,- that Lee was liable as executor, for the. increased value the slaves. The circuit cour.t not only decided against this point, but expressly told the jhiry, (hat Led was not liable for the.increased'trahie of the slaves.
The law of this country now is, that slaves devised by. will, pass as lands pass^ immediately to the devisee, and arc not assets in the hands of an executor;- bnt this is owing to an act ©f the legislature of 1800-, and pri.or. to that time, and,, consequently, at the death of tiie testa-torin this case,.slaves were, for the payment of debts, assets in the hands of an exeebtor; and, of course, the slaves here must be considered, with respect to the present question, as other personal'! estate; and that, an executor or administrator is liable for the' increased value of other personal catate, IhereiCan be-no doubt, I-t is accordingly lajd- down, that the. young of cattle or the wool of sheep, produced after the testator’s death, shall be asseis. Toller’s Law of Executors, 18(5; tyent. Office of Executor, 81, '
An executor 09 administrator, has a. right, where he has paid the deb/s of the testator or intesta te,, to retain of the assets in his hands,, the value of the debts he has paid, and if before the increase in v.alu.e of the skives here, Lee had-paid debts to the amount of the asseis in his hands, including the slaves, he would have had. a right to retain them; or if, at any time,, when he had paid debts lo an amount less than the whole assets in his hands, he.had elected, after exhausting the other personal goods, to take and hold in his own right, a specific part of the slaves equal to the debts he had he would ha,ve had a right to do so. But the evidence does Dot show that he had, paid debts to the whole amount of assets in his’bands when, the debts, were paid, nor that he had elected to lake any part of the slaves and hold them in his own right, in satisfaction of the. debts he had paid. The decision of-the court, therw* fore, upon this point, was erroneous.
Bibb, for plaintiffs; Crittenden, for defends nt
The judgment must be reversed with costs, and (lie cause be remanded for a new trial (o be had, not inconsistent herewith.